<hr />

### OSCAR K. INDERLIED v. VICTOR E. BULLEN.

Argued November 5, 1909—Decided September 1, 1910.

1. A husband who suspects his wife of adultery may properly watch her in order to obtain proof of her guilt; but he is not justified in making opportunities for her to violate her marriage vows.
2. A husband who observes diminution in the affection of his wife, and suspects that she is being tempted to be unfaithful to him, and yet takes no steps to hold her love, or to aid her in her struggle to resist temptation, and who finally affords the opportunity for her to fall from virtue, cannot rightfully complain if the jury takes his conduct into consideration in determining the amount of damages to be awarded to him in an action against his wife's seducer.

On plaintiff's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and VOORHEES.

For the plaintiff, *Michael Dunn.*

For the defendant, *Isadore Klenert.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This action was brought by the plaintiff to recover damages for the alienation of his wife's

affection, and for criminal conversation with her, by the defendant. The jury rendered a verdict in the plaintiff's favor, and assessed his damages at $400. He now seeks to have the verdict set aside upon the ground that the damages awarded were inadequate.

The plaintiff and his wife were married in the year 1896. According to his testimony on the witness stand they lived happily together, in mutual affection, until about the middle of August, 1908. At that time the plaintiff observed, as he says, a diminution in his wife's love for him; and he noticed that she seemed "disturbed in some way—that there was something on her mind." He appears to have sought no explanation from her, either at that time, or later, as to what it was that caused the change in her. About the middle of November, 1908, he arranged to visit his brother in Pennsylvania, and desired his wife to accompany him. She objected to doing so, saying that she would not enjoy it, and that he had better go without her. The plaintiff, conceiving that his wife had some ulterior motive in refusing to accompany him, decided (to quote his language) "to put her to the test." He told her that he would go alone, and, on the day set, bade her goodby, and left her ostensibly to make the proposed visit. Instead of doing so he returned to his home about eight o'clock in the evening, and watched his house from the outside for an hour. At the end of that time he let himself in with his latchkey, took off his shoes, crept up the back stairs very quietly, and sat there awaiting developments. About ten o'clock he observed his wife come downstairs into the hall, and then go back again. She did this four or five times before midnight. A little before two in the morning he heard someone come up the steps of the porch, open the front door, and then go into his room. He waited for about fifteen minutes, and then decided that he ought to have a witness; he left his house, went to one of his neighbors and persuaded the latter to come back with him to his home. Upon entering the house he and his witness went to his bedroom and there found his wife and the defendant in bed together.

It would be going too far to say that the actions of the plaintiff in this case justified the conclusion that he actually connived at his wife's adultery. A husband may properly watch his wife whom he suspects of that offence, in order to obtain proof of the fact, and such conduct on his part does not constitute connivance. *Wilson* v. *Wilson,* 154 *Mass.* 194. He is not justified, however, in making opportunities for her to violate her marriage vows. *Bish. Mar. & D.,* § 9; and this the plaintiff in the present case very plainly did. Moreover, he failed in the duty which he owed to her when he first observed the diminution in her affection for him, and the troubled condition of her mind. It is evident that this was the time when she first began to doubt her power to resist the temptation to which she was being subjected by the defendant. Then, if ever, was the time when she needed the help of her husband; and in the time of her peril he failed her. No attempt, apparently, was made by him to find out the cause of her depression, or to hold on to the affection which he saw was gradually slipping away from him. Instead of trying to hold her, to aid her in the hour of her need, he stood aloof and left her to fight her temptation alone; and, at the last, himself created the opportunity for her fall. The jury in this case evidently considered that a husband who has turned his back upon his wife at the period of her utmost stress, who has stood by while he has observed her struggling with temptation without an attempt on his part to aid her in the struggle, was not entitled to any very large sum as a compensation for the injury suffered by him through her fall from virtue. We cannot say that the jury was wrong in so considering.

The rule to show cause will be discharged.